UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD BOZUNG,
   Plaintiff,

-v-

No. 1:08-cv-339

HONORABLE PAUL L. MALONEY

OFFICER TRAVIS RAWSON,
OFFICER JOHN WILSON, and
THE CHARTER TOWNSHIP OF DeWITT,
   Defendants.

## OPINION AND ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on two motions for summary judgment. Defendant Officer John Wilson filed a motion (Dkt. No. 62) for summary judgment. Defendants Officer Travis Rawson and the Charter Township of DeWitt filed a motion (Dkt. No. 63) for summary judgment. Plaintiff filed a joint response to both motions. (Dkt. No. 65.) Defendant Officer Wilson filed a reply. (Dkt. No. 67.) Defendants Officer Rawson and DeWitt Township also filed a reply. (Dkt. No. 66.) This Court has had the benefit of oral argument on the motions.

I. BACKGROUND

Plaintiff Ronald Bozung (Plaintiff) has been on social security disability since 1991. (Bozung Dep. at 10.) At the time of the incident he was 54 years old and lived in Jackson, Michigan (Compl. ¶ 4.). Defendant Officer Travis Rawson (Defendant Rawson) is an officer with the DeWitt Township Police Department. (*Id.* ¶ 5.) Defendant Officer John Wilson (Defendant Wilson) is an officer with the Capital Region Airport Authority (CRAA) in Ingham County, Michigan. (*Id.* ¶ 6.) Defendant Charter Township of DeWitt (Defendant Township) is located in Clinton County,

Michigan. (*Id.* at ¶ 5.) The events giving rise to this complaint occurred on June 6, 2007 in Lansing, Michigan.

One of Plaintiff's neighbors in the apartment complex where he lives, asked Plaintiff for a ride to Walmart. (*Id.* at 36.) Plaintiff declined to give her a ride because his license was suspended. (*Id.*) He had also been drinking. (*Id.*) Plaintiff agreed to allow his neighbor's boyfriend to drive his truck. (*Id.* at 37.) The three went to Walmart in Plaintiff's truck, the neighbor and her boyfriend bought groceries, and they all returned home. (*Id.*) Just before arriving at the apartment complex, the driver of the truck saw a police vehicle with its lights on behind the truck. (*Id.* at 43.) The driver slowed down and put the truck in park, then opened the door and fled. (*Id.* at 43, 45.) As Defendant Rawson ran by the truck, he told Plaintiff and the neighbor, who both remained in the truck, to sit there.[1] (*Id.* at 46.) Rather than waiting in traffic, Plaintiff slid behind the wheel and pulled his truck into the parking lot of the apartment complex and into his usual parking spot, which was approximately 50 to 100 feet away from where the truck had stopped in the road. (*Id.*) Plaintiff and the neighbor waited in the truck for the police to return. (*Id.*) While he was waiting, Plaintiff decided to open a can of beer. (*Id.* at 48.)

Defendant Rawson testified his pursuit of the driver lasted about ten to twenty seconds. (Rawson Dep. at 41.) He lost the driver when the driver entered a secured door in the apartment complex and closed the door behind him, preventing Defendant Rawson from following. (*Id.* at 39-40.) Defendant Rawson drove his vehicle back to the front of the complex and observed Plaintiff's truck moving slowly into the parking lot. (*Id.* at 41.) Defendant Rawson estimates the truck drove

---

[1]Officer Rawson testified he remained in his vehicle while he pursued the fleeing driver and that he did not recall saying anything to the occupants of the truck. (Rawson Dep. at 39.)

between 60 and 80 feet from the road to the parking place where Plaintiff eventually stopped. (*Id.* at 41.)

Plaintiff testified Defendant Rawson approached the truck and asked Plaintiff to exit the vehicle. (Bozung Dep. at 49.) As Plaintiff got out of the vehicle, Defendant Rawson told him to turn around. (*Id.* at 50.) Plaintiff turned around and placed his hands on the bed of the truck. (*Id.*) Defendant Rawson ordered Plaintiff to spread his legs.[2] (*Id.* at 51.) Plaintiff felt Defendant Rawson kicking the inside of his legs. (*Id.*) Plaintiff then informed Defendant Rawson that Plaintiff was 54 years old, had a total hip replacement, had a plate and screws in his right ankle, and that it would take him a few minutes. (*Id.*) Plaintiff testified he told Defendant Rawson he was disabled.[3] (*Id.* at 56.)

According to Plaintiff, Defendant Rawson grabbed Plaintiff's arm, swung him around, and slammed him into the pavement. (*Id.* at 51, 56.) Plaintiff testified Defendant Rawson placed his knees in Plaintiff's back. (*Id.* at 51, 56, 59-60.) When asked where Defendant Rawson's knees were, Plaintiff admitted he could not see the knees, but could feel them. (*Id.* at 60.) Defendant Rawson pulled Plaintiff's hands behind Plaintiff's back and handcuffed Plaintiff. (*Id.* at 51, 59.) Plaintiff claims he does not recall Defendant Rawson ordering him to place his hands behind his back. (*Id.* at 58, 136-137, 138.) Plaintiff estimated, after he exited the vehicle, two to three minutes passed before Defendant Rawson took him to the ground. (*Id.* at 114-115.)

---

[2]Defendant Rawson does not recall using his foot to widen Plaintiff's stance. (Rawson Dep. at 52-53.)

[3]Plaintiff concedes he does not have a disability logo or sticker on his license plate (Bozung Dep. at 47), does not have a disability hanging tag on his rearview mirror (*Id.* at 47-48) and did not park in a spot designated for disabled persons (*Id.* at 47).

Defendant Rawson offers a different version of events, beginning with his first interaction with Plaintiff. Defendant Rawson approached the truck after it was parked in the parking lot and asked the individuals in the vehicle if they knew the person who jumped out and fled. (Rawson Dep. at 46.) Plaintiff identified himself and admitted he was the owner of the vehicle. (*Id.* at 47.) Defendant Rawson ordered Plaintiff and his neighbor to remain in the truck. (*Id.*) While Defendant Rawson was waiting for backup, he called central dispatch and ran the owner of the vehicle through LEIN[4] for warrants and to see if the truck was stolen. (*Id.*) Central dispatch affirmed that Plaintiff was the owner of the truck and informed Defendant Rawson that Plaintiff had an outstanding warrant for his arrest.[5] (*Id.* at 48.) Defendant Rawson then approached the truck again, informed Plaintiff there was an warrant for his arrest, which Plaintiff acknowledged, and asked Plaintiff to step out of the vehicle. (*Id.*)

Plaintiff exited the vehicle, turned his back to Defendant Rawson and moved down the length of the truck where he placed his hands on the bed. (*Id.* at 51.) Defendant Rawson informed Plaintiff he was under arrest on the outstanding warrant. (*Id.* at 50, 51-52.) Defendant Rawson ordered Plaintiff to place his hands behind his back. (*Id.* at 52, 53.) Plaintiff did not comply with the order and Defendant Rawson again demanded Plaintiff place his hands behind his back. (*Id.* at 54.) Plaintiff still did not respond. (*Id.*) Defendant Rawson grabbed Plaintiff's hand and again ordered Plaintiff to place his hands behind his back. (*Id.* at 55.) After Defendant Rawson grabbed Plaintiff's hand, Plaintiff said "wait, wait." (*Id.* at 55-56.) Defendant Rawson attempted to force Plaintiff's hand behind his back using a "muscling technique," but could not get Plaintiff's hand off the truck.

---

[4]LEIN is an acronym for Law Enforcement Information Network.

[5]At oral argument, the parties confirmed the warrant was for a misdemeanor, not a felony.

(*Id.* at 55, 56.) Defendant Rawson does not recall Plaintiff saying anything other than "wait, wait." (*Id.* at 58.) Defendant Rawson does not recall Plaintiff ever stating he was disabled, had a hip replacement, and had a plate and pins in his ankle. (*Id.* at 63-64.)

Defendant Rawson concluded Plaintiff was engaged in defensive resistance after Defendant Rawson had ordered Plaintiff to place his hands behind his back and had failed to do so. (*Id.* at 57-58.) Defendant Rawson attempted a "straight arm bar takedown." (*Id.* at 58.) The technique is used to control individuals who are resisting. (*Id.* at 70.) After grabbing Plaintiff's right hand (*Id.* at 73),[6] the two spun around and it appeared to Defendant Rawson as though Plaintiff was pulling away from him (*Id.* at 58-59). Defendant Rawson testified he first became aware of Defendant Wilson after Plaintiff was on the ground. (*Id.* at 72.)

Defendant Wilson's testimony is generally consistent with that of Defendant Rawson. Defendant Wilson heard a radio transmission from the DeWitt Township Police Department. (Wilson Dep. at 25.) A police unit reported a vehicle was failing to stop. (*Id.* at 26-27.) Defendant Wilson heard a second transmission from which he concluded an officer was in foot pursuit of a suspect. (*Id.* at 27.) Defendant Wilson requested his dispatcher get permission from the sergeant so that Defendant Wilson could assist as he was less than one half mile away. (*Id.* at 27-28.) When Defendant Wilson first saw Plaintiff, Plaintiff was standing next to his truck. (*Id.* at 37.) Defendant Rawson was standing several feet away from Plaintiff. (*Id.* at 41.)

Defendant Wilson confirmed Defendant Rawson made multiple requests for Plaintiff to place his hands behind his back. (*Id.* at 50, 51.) Defendant Wilson testified Defendant Rawson gave Plaintiff "a lot of time to place his hands behind his back," "at least 30 seconds." (*Id.* at 55.)

---

[6]Plaintiff believes Defendant Rawson grabbed Plaintiff's left arm. (Bozung Dep. at 56.)

5

Defendant Wilson heard Plaintiff say "I am, I am" several times. (*Id.* at 56.) Defendant Wilson claims not to have heard Plaintiff tell Defendant Rawson that Plaintiff was disabled. (*Id.* at 53.) Defendant Wilson did not see Defendant Rawson use his foot or leg to widen Plaintiff's stance. (*Id.* at 56.) After directing Plaintiff to place his hands behind his back multiple times and after Plaintiff failed to comply with Defendant Rawson's order, Defendant Rawson grabbed Plaintiff's left arm or hand. (*Id.* at 59.) At some point, Defendant Rawson succeeded in removing Plaintiff's hand and Plaintiff spun around and pulled free of Defendant Rawson's grasp. (*Id.* at 60.) To Defendant Wilson, Plaintiff appeared to be stepping away from the truck and from Defendant Rawson so Defendant Wilson grabbed Plaintiff's left arm (*Id.* at 61-62) using an escort hold (*Id.* at 63). The three men, Defendants Wilson and Rawson and Plaintiff, all fell forward to the ground. (*Id.* at 62.) Defendant Wilson believed Plaintiff was either trying to flee or try to punch one of the two officers. (*Id.* at 63.) Defendant Wilson admits he had his knee on Plaintiff's shoulder blade. (*Id.* at 67.) Defendant Wilson denies ever placing his foot on Plaintiff. (*Id.* at 67, 68.)

Plaintiff testified to Defendant Wilson's involvement in his arrest. Plaintiff testified, after Defendant Rawson slammed him into the pavement, Plaintiff tried to lift his head. (*Id.* at 51.) Plaintiff, however, could not lift his head because he "felt Mr. Wilson's foot on my neck." (*Id.*) Plaintiff also testified, prior to Defendant Rawson grabbing his arm, Plaintiff had not seen any other officers other than Defendant Rawson. (*Id.* at 58.) Plaintiff was asked about when he saw Defendant Wilson.

> Q. When you were put to the ground, your face was facing downward?
> A. Yes.
> Q. Toward the cement?
> A. The asphalt, yeah.
> Q. Was that when you saw Officer Wilson?

6

> A. Yeah, I didn't see him, I felt a foot on my neck.
> Q. How do you know it was a foot?
> A. Well, you couldn't kneel on it.
> Q. Could it have been a hand?
> A. No, it wasn't a hand.
> Q. How did you know it was Officer Wilson?
> A. He was the only other person around there.
> Q. How did you know it was his foot?
> A. Because the other officer had his knees in my back, so unless he's pretty flexible, I don't see where he could have had both, one in my back and one in my neck.
> Q. You didn't see Officer Wilson's foot on your neck, correct?
> A. How could I, my face was on the ground. I felt the presence there.

(*Id.* at 115-116.)

The parties have included portions of the depositions of two witnesses. Mr. James Leggions observed two or three officers at the scene. (Leggions Dep. at 38.) Mr. Leggions did not hear Plaintiff say anything to the officers. (*Id.* at 39.) Mr. Leggions claims the officers said things to Plaintiff, but could not understand what was being said. (*Id.*) Mr. Leggions saw one of the officers throw Plaintiff to the ground, and then put a boot on Plaintiff's neck. (*Id.* at 42, 43.) When asked whether the foot was on Plaintiff's head or neck, Mr. Leggions responded, "it was back there somewhere. I can't say exactly where it was at, but I know his foot was on the man's head somewhere." (*Id.* at 44.) Mr. Leggions clarified the person who placed his boot on Plaintiff was the officer who drove the SUV, Defendant Rawson. (*Id.* at 42, 56.) Mr. Leggions admits he couldn't see too much because one of the cruisers was between him and where the incident occurred. (*Id.* at 55.)

Melonie Harris, Plaintiff's girlfriend, also observed the arrest. Ms. Harris testified there were two officers and one was twisting Plaintiff's arm. (Harris Dep. at 52.) Ms. Harris claims to have heard Plaintiff tell the officers he was disabled and to wait a minute. (*Id.* at 60.) Ms. Harris testified,

after Plaintiff was on the ground, both officers had their foot on Plaintiff's back. (*Id.* at 53-54.) Ms. Harris contends, after Plaintiff was on the ground, she approached the truck yelling to the officers that Plaintiff has disabled. (*Id.* at 58-59.)

Plaintiff was injured during the arrest and was taken to the hospital where he was treated for a cut over his right eye. (Plaintiff's Exhibit 1 - Medical Records for 6/06/07.) Plaintiff also registered .18 on a breathalyzer. (Rawson Exhibit 4 - Medical Records.) X-rays revealed fractures in Plaintiff's right hand. (*Id.*) Three weeks later, Plaintiff Bozung returned the hospital complaining of neck pain and numbness and weakness in his left arm. On June 28, 2007, a CT scan revealed "severe central canal stenosis from the level of C3 through C6." (*Id.* - Medical Records for 6/28/2007) On June 30, Plaintiff underwent surgery. (*Id.* - Heilman Letter dated 11/03/2008.) Plaintiff was in the rehabilitation unit from July 3, 2007 through November 13, 2007. (*Id.* - Rehab. Discharge Summary.)

Plaintiff filed his complaint on April 11, 2008. The complaint alleges four counts. The first count, brought under 42 U.S.C. § 1983, alleges all three Defendants violated Plaintiff's civil rights. Plaintiff alleges Defendant Officers used unreasonable and excessive force in effectuating his arrest. (Compl. ¶ 20.) Plaintiff alleges Defendant Township failed to train its officers in the proper use of force and failed to train its officers to properly accommodate individuals with disabilities. (Compl. ¶ 23.) The three remaining counts allege claims under state law. The second count alleges Defendant Officers' conduct constitutes gross negligence. Count three is a claim for assault and battery against Defendant Officers. Count four alleges all three Defendants violated the Michigan Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101, *et seq.*

II. LEGAL FRAMEWORK

Because Plaintiff alleges a federal question, this Court has jurisdiction over the complaint. 28 U.S.C. § 1331. This Court has jurisdiction over the pendant state law claims under 28 U.S.C. § 1367(a).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 574. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). *See also Bryant v. Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974) ("Mere conclusory and unsupported allegations, rooted in speculation, do not meet" the burden of showing a genuine issue of material fact).

III. ANALYSIS

### A. Count I - Excessive Force

To establish a claim under 42 U.S.C. § 1983, a plaintiff must show (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Where the plaintiff alleges law enforcement officials used excessive force during an arrest, the claim should be analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 396-397 (1989). The proper application of the reasonableness standard "requires careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. This list of factors is not exclusive, and the "ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006)).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S at 386. A claim of the use of excessive force requires a court to determine whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation. *Id.* at 397. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force

10

necessary in a particular situation." *Id.* at 396-397.

Plaintiff has not established the actions of the officers were unreasonable under the totality of the circumstances. For the purposes of the motions, this Court must accept the facts in a light most favorable to Plaintiff as the nonmoving party. This Court assumes Plaintiff informed the officers he was disabled. Plaintiff alleges he informed Defendant Rawson about his disability. (Bozung Dep. at 56.) Ms. Harris alleges Plaintiff told both officers he was disabled. (Harris Dep. at 60.)

Defendant Rawson did not act unreasonably under the totality of the circumstances. From the record, Defendant Rawson was aware of the following facts: (1) when he attempted to stop the vehicle, the driver of the vehicle had fled the scene (Rawson Dep. at 38); (2) Plaintiff, the owner of the vehicle, has a warrant for his arrest (*Id.* at 48); and (3) neither the vehicle nor Plaintiff had been searched (*Id.* at 58). Defendant Rawson had ordered Plaintiff to place his hands behind his back multiple times. (*Id.* at 54.) Plaintiff affirmatively acknowledged hearing the order by his oral responses, "I am, I am" and "wait, wait." (*Id.* at 55-56.) Plaintiff had been afforded ample opportunity to comply with the order. Plaintiff did not explain how or why his disabilities, hip and ankle injuries, prevented him from complying with the order. There is nothing in the record from which this Court might infer that Plaintiff would have trouble complying with the directive to place his hands behind his back.[7] Based on the totality of the circumstances, as described above, Defendant Rawson acted reasonably when he opted to force compliance with his order by taking

---

[7]At oral argument, Plaintiff's counsel argued Plaintiff may have had to keep his hands on the bed of the truck to keep from falling over because his feet were spread too far apart. The documentary evidence submitted to this Court contains no factual basis from which this Court might infer that explanation.

Plaintiff's hand off the truck. (*Id.* at 56.) Plaintiff resisted Defendant Rawson's physical efforts to remove his hand from the truck. Under the totality of the circumstances, Defendant Rawson acted reasonably when he performed the straight arm bar takedown.

Defendant Wilson also did not act unreasonably under the totality of the circumstances. Plaintiff admits he was not aware of Defendant Wilson until after the takedown occurred. Plaintiff speculates Defendant Wilson placed a foot on his neck. Plaintiff concedes he could not see what was occurring as he was facing the pavement. (Bozung Dep. at 45-46.) No witness saw Defendant Wilson place a foot on Plaintiff's neck. Ms. Harris testified both officers placed their feet on Plaintiff's back. (Harris Dep. at 53-54.) Mr. Leggions testified only Defendant Rawson touched Plaintiff while Plaintiff was on the ground. (Leggions Dep. at 42, 56.) Under these circumstances, where the witnesses contradict Plaintiff's conjecture and belief, the Court is not required to accept Plaintiff's version of the facts. Plaintiff has not established a genuine issue of material fact.

**B. Qualified Immunity**

Even if this Court were to find a genuine issue of material fact exists on Plaintiff's claim for excessive use of force, the two officers are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, ___ U.S. ___; 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). *See also Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008) (same) (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)). The protection applies whether the official's error is based on a mistake of law, mistake of fact or a mistake based on mixed questions of law and fact. *Pearson*, 129 S.Ct. at 815 (quoting *Groh v.*

*Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J. dissenting)). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court outlined a two step procedure for resolving an official's claim for qualified immunity: (1) a court must decide whether the facts the plaintiff alleges constitute a violation of a constitutional right and (2) a court must then decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 815-816. The Supreme Court held the *Saucier* sequence was no longer mandated and authorized judges to exercise their sound discretion in deciding which of the two prongs should be addressed first. *Id.* at 818.

The issue of qualified immunity in the Sixth Circuit Court of Appeals is resolved by applying a three part test which requires a court to determine (1) whether a constitutional right was violated, (2) whether the right was clearly established and one of which a reasonable person would have known, and (3) whether the official's action was objectively unreasonable under the circumstances. *Bornhorst*, 513 F.3d at 511 (citing *Mehra*, 186 F.3d at 691). "An arresting officer is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting officer." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "The doctrine protects all but the plainly incompetent or those who knowingly violate the law. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (quoting *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008)).

When a defendant raises qualified immunity as a defense, the plaintiff bears the burden of establishing the defendant is not entitled to qualified immunity. *Everson*, 556 F.3d at 494 (citing *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006)); *Bing v. City of Whitehall*, 456 F.3d 555, 563 (citing *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999)). The plaintiff must show that the right was clearly established. *Everson*, 556 F.3d at 494 (citing *Barrett v. Steubenville City Sch.*,

388 F.3d 967, 970 (6th Cir. 2004)). The defendant, on the other hand, bears the burden of showing the challenged action was objectively reasonable in the light of existing law. *Id.* (citing *Tucker v. City of Richmond*, 388 F.3d 216, 220 (6th Cir. 2004). In assessing qualified immunity, the facts are taken as alleged by the plaintiff, unless those allegations clearly contradict the record in which case those facts will not be considered. *Everson*, 556 F.3d at 494 (citing *Marvin v. City of Taylor*, 509 F.3d 234, 249 (6th Cir. 2007)). The critical inquiry is "whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation confronted." *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 173 (6th Cir. 2004)) (quoting *Phelps v. Coy*, 286 F.3d 299 (6th Cir. 2002)).

To determine whether a right has been "clearly established," this Court looks first to Supreme Court cases, then to Sixth Circuit cases and finally to decisions of other circuit courts. *Bing*, 456 F.3d at 570 (citing *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991)). In order for a right to be clearly established, there need not be a case with a fundamentally or materially similar fact pattern; rather the question is whether the defendants had "fair warning" that their actions were unconstitutional. *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005). However, "the right must be defined with the appropriate level of specificity to determine whether it was clearly established at the defendants acted." *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002) (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

Defendants have established their actions were objectively reasonably in light of existing law. On the assumption that a mistake was made, under these circumstances, the mistake was reasonable. Plaintiff, although not overtly threatening, did not comply with Defendant Rawson's demands. Plaintiff was given sufficient time to comply with the demand. Plaintiff did not offer any

explanation why his disability prevented him from placing his hands behind his back. When Defendant Rawson attempted to take Plaintiff's hand off the vehicle, Plaintiff physically resisted. As explained above, although Plaintiff believes Defendant Wilson placed his foot on Plaintiff's neck, Plaintiff's belief is mere conjecture and speculation and is contradicted by all the witnesses.

Plaintiff has not established the right he alleges was violated was clearly established at the time of the incident. Rather than citing legal authority, Plaintiff relies on an affidavit from Dr. Aaron Westrick, Ph.D, a professor at Lake Superior State College who opines that the police procedures used were grossly negligent. (Plaintiff's Exhibit 3.) Plaintiff also points to portions of Defendant Wilson's testimony.[8] Neither document fulfills Plaintiff's burden to show the right was clearly established. Whether a federal right has been clearly established at a particular time is a question of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). Plaintiff's disability distinguishes this case from other arrests. Plaintiff argues he should have been afforded more time, or somehow reasonably accommodated, because of his disability. Plaintiff, however, cites no legal authority to establish that the right to be free from excessive force is somehow different because one suffers from a disability. Plaintiff has not presented any legal authority which would have given Defendant Officers fair warning that what they did violated Plaintiff's civil rights.

**C. Municipal Liability**

Plaintiff's claim against Defendant Township must also fail. If no individual defendant violated Plaintiff's rights, the municipality cannot be held liable under a failure to train theory. *See Crocker v. Macomb County*, 119 F.App'x 718, 724 (6th Cir. 2005). If no constitutional violation

---

[8]Defendant Wilson agreed at his deposition that had he placed a foot on Plaintiff's neck during the handcuffing procedure, it would have been excessive. (Wilson Dep. at 70-71.)

by the individual defendants is established, the municipality cannot be held liable under section 1983. *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). *See also Meier v. County of Presque Isle*, No. 07-13760-BC, 2009 WL 1285849 at * 3 (E.D. Mich. Apr. 30, 2009) (collecting cases from the Sixth Circuit).

### D. Supplemental State Law Claims

A district court may decline to exercise supplemental jurisdiction over pendant state law claims when the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Generally, when a district court dismisses federal law claims before trial, the court should not reach the plaintiff's state law claims. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Jurisdiction over the state law claims should be maintained only where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh the concern over needlessly deciding state law issues. *Moon*, 465 F.3d at 728 (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

This Court declines to exercise jurisdiction over the remaining state law claims. The issues raised in Defendants' motions and Plaintiff's response regarding Plaintiff's state law claims are best resolve by a state court. Whether the officers are entitled to Michigan's statutory immunity and whether the gross negligence claim is, in actuality, an artfully worded intentional tort are best answered by a state court. In addition, whether either officer is entitled to immunity under the PWDCRA is a question no state court has been afforded the opportunity to resolve.

## IV. CONCLUSION

For the reasons provided above, Defendants are entitled to summary judgment on the federal

claims alleged against them in the complaint. From the record before the Court, there are no genuine issues of material dispute on the claims for excessive force against Defendant Rawson and Defendant Wilson. Even if a genuine dispute exists, Defendant Officers are entitled to qualified immunity. Their conduct does not fall into the category of plainly incompetent or knowing violations of the law. In addition, Plaintiff has not established the constitutional right he alleges was violated was clearly established at the time of the incident. Because no constitutional violation occurred, Defendant Township cannot be held liable under a theory of failure to train. This Court declines to exercise supplemental jurisdiction over the pendant state law claims.

ORDER

**IT IS HEREBY ORDERED:**

1. Defendant Wilson's motion (Dkt. No. 62) is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.** The federal law claims against Defendant Wilson are **DISMISSED WITH PREJUDICE.**

2. Defendants Rawson and DeWitt Township's motion (Dkt. No. 63) is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.** The federal law claims against Defendants Rawson and DeWitt Township are **DISMISSED WITH PREJUDICE.**

3. This Court **DECLINES** to exercise **JURISDICTION** over the pendant state law claims. The pendant state-law claims are **DISMISSED WITHOUT PREJUDICE.**

Date: August 4, 2009        /s/ Paul L. Maloney
Paul L. Maloney
Chief, United States District Judge