UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD BOZUNG,
    Plaintiff,

No. 1:08-cv-339

-v-

HONORABLE PAUL L. MALONEY

OFFICER TRAVIS RAWSON,
OFFICER JOHN WILSON, AND
THE CHARTER TOWNSHIP OF DEWITT,
    Defendants.

ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

On August 4, 2009, the court granted in part motions for summary judgment filed by Defendants. *Bozung v. Rawson*, No. 1:08-cv-339, slip op. (W.D. Mich., Aug. 4, 2009) (opinion and order granting in part and denying in part without prejudice Defendants' motions for summary judgment). Specifically, the court concluded there were no genuine issues of material fact on Plaintiff's claim for excessive force against either officer and that both Defendant officers were entitled to judgment as a matter of law. The court also found the two Defendant officers were entitled to qualified immunity. Plaintiff Bozung filed a motion (Dkt. No. 76.) for reconsideration on these two issues. For the reasons provided below, Plaintiff's motion is **DENIED.**

STANDARD OF REVIEW

Under the Local Rule of Civil Procedure for the Western District of Michigan, a court may grant a motion for reconsideration when the moving party demonstrates both a "palpable defect" by which the Court and parties have been misled and a showing that a different disposition of the case must result from the correction of the mistake. W.D. MICH. L. R. CIV. P. 7.4(a). A motion for reconsideration will be denied where the issues raised by the moving party have already been raised

and ruled upon by the court, either expressly or by reasonable implication. *Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). The Federal Rules of Civil Procedure also provide authority for motions for reconsideration. A party may file a motion to alter or amend a judgment within 28 days after the entry of judgment. FED. R. CIV. P. 59(e). A motion brought under Rule 59(e) requests the court reconsider matters properly encompassed in a decision on the merits. *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 451 (1982). Under the rule, a district court may reconsider the judgment entered and may grant the motion for any of four reasons: (1) an intervening change in the controlling law, (2) newly discovered evidence, (3) to correct a clear error of law, or (4) to prevent manifest injustice. *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

ANALYSIS

The facts giving rise to Plaintiff's claims are outlined in the court's earlier opinion. *See Bozung*, No. 1:08-cv-339, slip op. * 1-8. The facts will be repeated here only as necessary.

EXCESSIVE FORCE

On the claim for excessive force, Plaintiff advances two reasons for reconsideration of the earlier order. First, the court accepted Defendants' version of the facts and overlooked testimony which, when viewed in a light most favorable to Plaintiff, create genuine issues of material fact. Second, those facts implicate the reasonableness standard for the use of force outlined in *Graham v. Connor*, 490 U.S. 386 (1989). In *Graham*, the Court held a claim for excessive force under the Fourth Amendment must be analyzed under the reasonableness standard and must consider the "severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest

2

by flight." *Id.* at 396.

Plaintiff highlights several alleged factual disputes. Plaintiff asserts the fact that the warrant for Plaintiff's arrest is a misdemeanor warrant bears on the first *Graham* factor. Plaintiff is of course correct. However, Plaintiff does not point to any place in the record where Defendant Rawson was informed that the warrant for Plaintiff's arrest was for a misdemeanor, rather than for a felony. In the earlier opinion, this court noted only that Plaintiff had an outstanding warrant for his arrest and that Defendant Rawson was aware of that fact. Plaintiff argues there is at least a genuine issue of material fact as to whether he had been searched when Defendant officers decided to take him to the ground, citing testimony from Melonie Harris[1] Whether Plaintiff had been searched implicates the second *Graham* factor, whether Plaintiff posed an immediate threat to the officers. Ms. Harris' testimony does not establish or lead this court to infer that the officers had performed a search of Plaintiff prior to the decision to take him down. Ms. Harris testified that the officer started to pat Plaintiff down before the officer began trying to force Plaintiff's legs into a wider stance. Ms. Harris does not state the search was performed or concluded, only that one had started. (Harris Dep., 45-46.) Defendant Rawson testified he had not searched Plaintiff. (Rawson Dep., 58.) Plaintiff never testified that he was patted down or searched. (Bozung Dep., 51-56.) The testimony offered by these individuals does not allow the inference that a search of Plaintiff had been completed prior to the decision to subdue him.

---

[1] In Plaintiff's motion for reconsideration, he quotes portions of Ms. Harris' deposition that have not been submitted to the court as an exhibit. Defendant Wilson includes portions of Ms. Harris' deposition beginning on page 52 as an exhibit to his motion. Plaintiff includes portions of Ms. Harris' deposition, beginning with the last line on page 45, as an exhibit to his response. The quoted material from page 43 of Ms. Harris' deposition included in Plaintiff's motion for reconsideration has not been submitted to the court.

Next, Plaintiff takes issue with the third factor in *Graham*, whether he was actively resisting arrest or attempting to evade arrest by flight. Plaintiff asserts he repeatedly testified Defendant Rawson never told him to place his hands behind his back until after Defendant Rawson took him to the ground. Plaintiff's testimony does not support this conclusion. What Plaintiff heard and what Defendant Rawson ordered is not subject to dispute. Plaintiff testified he did not hear Defendant Rawson order him to place his hands behind his back. (Bozung Dep., 58, 136-137, 138.) Both officers testified Plaintiff was given multiple orders to place his hands behind his back. (Rawson Dep., 52-55; Wilson Dep., 50, 51.) Plaintiff disagrees with the conclusion that he physically resisted Defendant Rawson. Indeed, Plaintiff testified he "did everything he asked as quick as I could, to my ability." (Bozung Dep., 128.) Because Plaintiff did not hear the repeated commands to place his hands behind is back, the court cannot conclude he did everything he was asked to do.

The court assumed both that Plaintiff had a disability and that Defendant officers were aware of his disability. Plaintiff asserts he informed the officers he was disabled, had his hip replaced, and had a plate and screws in his ankle. (Bozung Dep., 56.) Plaintiff informed Defendant Rawson about his disabilities when Defendant Rawson was trying to get Plaintiff to spread his legs apart. (*Id.* 51, 55, 128.) In concluding Defendant Rawson's decision to take down Plaintiff was reasonable, the court found no evidence supporting the conclusion that Plaintiff's disability would have hindered his ability to place his hands behind his back. From these facts, Plaintiff is correct that he was not *actively* resisting arrest nor did he pose any current threat to flee the scene.

Defendant Rawson's decision to employ a straight arm bar take down (Rawson Dep., 58), in light of these facts, was not unreasonable. Plaintiff had a warrant out for his arrest and, on this record, the severity of the crime was not known. Neither Plaintiff nor his vehicle had been searched.

4

Plaintiff, while not actively resisting arrest, was not complying with Defendant Rawson's commands.

Plaintiff alleges there is a genuine issue of material fact as to whether Defendant Wilson placed a boot on his neck after Defendant Rawson took Plaintiff to the ground. Plaintiff points to the same evidence relied upon in the earlier opinion to reach the opposite conclusion. Plaintiff further disagrees with the court's reliance on *Scott v. Harris*, 550 U.S. 372 (2007) because no evidence, such as a videotape, thoroughly contradicts Plaintiff's version of events. The court disagrees. Two individuals testified to facts favoring Plaintiff and James Legionnes. Plaintiff admitted he felt something on his neck, but could not see what because his "face was on the ground." (Bozung Dep., 116.) Plaintiff surmised it was Defendant Wilson because Defendant Wilson was the only other person there. (*Id.*) Plaintiff surmised it was a boot because "you couldn't kneel on it." (*Id.*, 115.) Mr. Legionnes first testified he saw Defendant Rawson, not Defendant Wilson, place a boot on Plaintiff's neck. (Legionnes Dep., 45-46.) Mr. Legionnes also testified he "couldn't see too much because one of the cruisers was between me and what was happening. Well, I figured they did the man wrong anyway." (*Id.*, 55.) On the other hand, Ms. Harris testified both officers had their feet on Plaintiff's back.[2] (Harris Dep., 53.) Defendant Wilson testified he placed his knee on Plaintiff's shoulder blades. (Wilson Dep., 67.) On the basis of this record, the court is convinced no genuine issue of material fact exists. The only person who asserts Defendant Wilson placed a boot on Plaintiff's neck is Plaintiff, who also admits he could not see what was occurring. Mr. Leggiones testified only Defendant Rawson was involved, not Defendant Wilson, and further

---

[2]Plaintiff claims Mr. Harris also testified, on page 57 of her deposition, that one of the officer's entire foot was not below the neckline. (Pl. Br. 7.) Page 57 of Ms. Harris' deposition is not part of any exhibit submitted to the court.

admitted his view of the scene was obscured.

QUALIFIED IMMUNITY

Regarding the claim for qualified immunity, the court concluded Defendant officers were entitled to qualified immunity because their actions were reasonable in light of existing law and because Plaintiff had not established the right he alleges was violated was clearly established. Plaintiff contends his right to be free from excessive force, in this context, was clearly established and the court erred in interpreting case law from the Sixth Circuit Court of Appeals. Specifically, Plaintiff asserts an arresting officer has a obligation to take into account a suspect's diminished capacity during an arrest. Plaintiff claims, "the Sixth Circuit has long found the right to be free from excessive force in cases involving non lethal force regarding arrestees with diminished capacities due to disability or injury." (Pl. Br. 8.) Plaintiff suggests Defendant officers' decision to force his compliance with their directives by taking him down precludes a finding that Defendant officers are entitled to qualified immunity.

When analyzing a claim for qualified immunity, Plaintiff bears the burden of showing the right allegedly violated was clearly established. When determining whether a right is "clearly established," a court looks first to Supreme Court opinions, then to opinions from the Sixth Circuit Court of Appeals, and finally to opinions from other circuits. *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991) (citing *Masters v. Crouch*, 872 F.2d 1248, 1251-1252 (6th Cir. 1989)). In their briefs in support of their motion, Defendants argue the law with regard to the right allegedly violated was not clearly established. Plaintiff, in an effort to show Defendant officers were not entitled to qualified immunity, cites a letter from his expert, an associate professor in the School of Criminal

6

Justice at Lake Superior State University.[3] In the attached report, Dr. Westrick relies on statutes and police training material to conclude the officers used excessive force when they arrested Plaintiff. Nowhere in the report is qualified immunity discussed. Plaintiff's response brief cites no court authority. Plaintiff posits, at oral argument he articulated the correct legal principle, but provided the court with the wrong case name. (Pl. Br. 8.)

Plaintiff cites three Sixth Circuit cases in his motion for reconsideration: (1) *Champion v. Outlook*, 389 F.3d 893 (6th Cir. 2004), (2) *Walton v. City of Southfield*, 995 F.2d 1131 (6th Cir. 1993), and (3) *St. John v. Hickey*, 411 F.3d 762 (6th Cir. 2005). A careful review of the three cases referenced in Plaintiff's motion does not reveal that the law was clearly established for the purpose of placing Defendants on notice that what they were doing violated Plaintiff's constitutional rights. *See Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005). In *Champion*, the Sixth Circuit denied the defendant officers qualified immunity because the type of physical force used was not objectively reasonable and the officers should have been aware that what they were doing violated the plaintiff's rights. *Id.* at 902-903. Viewing the facts in a light most favorable to the plaintiff, the officers used pepper spray on the plaintiff after he had been handcuffed and hobbled. *Id.* at 903. The officers also put substantial and significant pressure on the plaintiff's back, while he was face down, after being subdued. *Id.* The court found both of these acts unreasonable and volative of clearly established law. *Id.* at 903-904. The court further noted the officers were confronting an

---

[3] Plaintiff included an affidavit from the expert which stated, in toto, "I, Aaron Westrick, Ph.D state that if sworn as a witness, I will competently testify to the contents of my report attached hereto and incorporated herein." (Ex. 3 to Plaintiff's Resp. to Mot. Summ. Judg.)

individual they knew was mentally ill or retarded[4] and "the diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted."[5] *Id.* at 904. Any analogy between Plaintiff's situation and the situation in *Champion* would be strained. It was clearly established law that what the officers allegedly did in *Champion* would have violated any person's rights, let alone a person with diminished capacities. Plaintiff has not posited any case law suggesting the officer's use of force in taking Plaintiff to the ground or how they restrained Plaintiff while he was on the ground constitutes a violation of the Fourth Amendment.

The situation in *St. John* is no more analogous to Plaintiff's situation than in *Champion.* Mr. St. John suffered from muscular dystrophy and was wheel-chair bound. The sheriff's department was called to Mr. St. John's house on a nuisance complaint and a heated exchange between the officer and Mr. St. John occurred. Mr. St. John was ultimately arrested for disorderly conduct in the fourth degree. The officers picked up Mr. St. John and his wheel chair in order to get him out of the house and into the police car. In the process, the officers dropped him a total of three times. Mr. St. John informed the officers his legs did not bend and that he would not fit in the back of the police car. Nevertheless, the officers attempted to force Mr. St. John into the car and ultimately caused injury to his legs when his legs got caught between the car door and the body of the car. Viewing the fact in a light most favorable to the plaintiff, the court found there were genuine issues of material fact whether the officers' conduct was reasonable. *St. John*, 411 F.3d at 772. The plaintiff did not physically resist the officers, he presented no risk to anyone's safety and he was not a flight

---

[4]The plaintiff was autistic, lacked the ability to care for himself, was nonresponsive and unable to speak. *Champion*, 380 F.3d at 896.

[5]Plaintiff was not a detainee when the incident giving rise to his claims occurred. Plaintiff was handcuffed only after all the events giving rise to his claims had occurred.

risk. *Id.* at 772. Furthermore, the officers were aware the plaintiff had physical limitations and that he would not fit in the back seat. *Id.* The court held "the right of a nonviolent arrestee to be free from unnecessary pain knowingly inflicted during an arrest was clearly established" at the time Plaintiff was arrested. *Id.* at 774. In rejecting the officers' claim for qualified immunity, the court held reasonable officers, with knowledge that a wheel-chair bound persons' legs would not bend, would have known it was unlawful to force the individual into the back of a cruiser causing unnecessary pain. *Id.* at 775.

The claims in *Walton* are similar to the claims in *St. John.* The plaintiff in *Walton* was arrested for driving on a suspended license. The plaintiff was hostile and uncooperative with the officers. When the officers tried to handcuff the plaintiff, she informed the officers she had a sore shoulder and had just come from the doctor's office for treatment on that shoulder. The officers handcuffed her behind her back anyway. The court denied the officer's assertion of qualified immunity. *Walton*, 995 F.2d at 1341-42. "An excessive use of force claim could be premised on Officer Birberick's handcuffing Walton if he knew that she had an injured arm and if he believed she posed no threat to him." *Id.* at 1342.

The facts in both *St. John* and *Walton* are sufficiently different from the facts here. Unlike the plaintiffs in *St. John* and *Walton*, it was not clear that Mr. Bozung did not pose a risk to the arresting officers. The plaintiffs in *St. John* and *Walton*, although hostile and uncooperative, complied with orders issued by the arresting officers. More importantly, the plaintiffs in *St. John* and *Walton* explained to the officers why their disabilities prevented them from doing what the arresting officers wanted them to do. Mr. Bozung told the officers about hip, leg and ankle problems. Nothing in the record gives rise to an inference that Mr. Bozung could not have complied

9

with the directive to place his hands behind his back. It is not obvious to a reasonable officer why a hip and ankle disability prevents suspects from placing their arms behind their backs. When Defendant Rawson took Plaintiff to the ground, he and Defendant Wilson concentrated their efforts on Plaintiff's upper body and torso, not his hips or legs. These cases do not indicate that a reasonable officer would know the decision to take Mr. Bozung down in the manner in which they did violated his right to be free from excessive force.

CONCLUSION

Plaintiff Bozung's motion for reconsideration is **DENIED.** The arresting officers conduct was reasonable under the totality of the circumstances. The arresting officers are entitled to qualified immunity.

ORDER

For the reasons provided in the accompanying opinion, Plaintiff Bozung's motion (Dkt. No. 76) for reconsideration is **DENIED. IT IS SO ORDERED.**

Date:   December 16, 2009                                              /s/ Paul L. Maloney
                                                                        Paul L. Maloney
                                                                        Chief United States District Judge